## Case No. 13,241.

SPICER et al. v. WARD et al.

[3 N. B. R. 512 (Quarto, 127).] [1]

District Court, D. Rhode Island. 1870.

BANKRUPTCY—GENERAL ASSIGNMENT — ESTOPPEL.

1. A general assignment by an insolvent firm of all the firm property for the benefit equally of all its creditors, untainted by actual fraud, is nevertheless an act of bankruptcy, as being, in contemplation of law, made with intent to defeat or delay the operation of the bankruptcy act [of 1867 (14 Stat. 517)].

[Cited in Re Marter, Case No. 9,143; Globe Ins. Co. v. Cleveland Ins. Co., Id. 5,486.]

[Disapproved in Haas v. O'Brien, 66 N. Y. 602.]

2. Treating with the assignee and bankrupts by creditors, with an offer to assent to the assignment if the assignee should be changed, does not estop creditors from proceeding in

---

[1] [Reprinted by permission.]

bankruptcy, though it is possible for creditors so to act as to be estopped in such a case.

[Cited in Re Williams, Case No. 17,706.]

[This was a proceeding in bankruptcy by Spicer & Peckham against Ward & Trow.]

KNOWLES, District Judge. This is one of the many cases in which the points presented for consideration are neither so novel, nor so disputable now, in 1870, as to require, or even to warrant a very elaborate statement on the part of the court, of the grounds of its decision. The petitioners charge against the respondents three certain acts of bankruptcy. These, or some one of them, they are bound to prove under penalty of a dismissal of their petition with costs—and, of course, a liability to an action for malicious and unfounded prosecution. The respondents file a denial, in common form, and they challenge proofs of the criminatory allegations. The essential allegation of fact in each of the three charges is, that on the 3d day of January, 1870. the respondents made and executed to one George W. Payton an assignment of all their property, as a firm, for the benefit equally of all the firm's creditors—which act, it is alleged, in the first specification, was done with the intent to hinder, delay, and defraud creditors; in the second specification, with intent to defeat and delay the operation of the bankrupt act —being insolvent; and in the third, with the same intent as last mentioned, being in contemplation of bankruptcy or insolvency.

The making of the assignment being admitted, and the insolvency of the firm at the time being fully proven, or conceded, it was denied on the part of the respondents that an act of bankruptcy within the purview of the bankrupt act was shown, and this upon two grounds.

The first of these was, that an assignment for the benefit equally of all creditors, untainted by actual fraud, was not, under the statute, an act of bankruptcy; citing in support of this position an opinion of Justice Swayne of the supreme court, overruling a decision of the judge of the Southern district of Massachusetts,—In re Kingsley [Case No. 7,819], and Langley v. Perry [Id. 8,067], and an opinion of Justice Nelson of the same court, reported in Sedgwick v. Place [Id. 12,622]. In this position of the respondents I am unable to concur. Granting, for the sake of argument, that these opinions of these distinguished jurists sustain fully the point to which they are cited (a concession, in my judgment, against the fact), I am constrained to say that I cannot assent to that construction of the bankrupt law for which the respondents here contend. Of the opinion of Justice Swayne, we have but a reporter's synopsis of points ruled— not a sentence of the author's reasonings— while, on the other hand, in Perry v. Langley [Id. 11,006], we have the full opinion of Judge Leavitt, In Langley v. Perry [su-

pra], the opinion overruled by Justice Swayne, in which. according to my judgment, the true construction of the bankrupt law, as regards the point in question, is given, with reasons therefor which seem to me unanswerable. Under the view of the law as here expounded, the making of the assignment of the 3d of January by the respondents was an act of bankruptcy, because made, in contemplation of law, with intent to defeat or delay the operation of the bankrupt act. Says the judge: "The intention of the law clearly was, that when a failing debtor was conscious of his inability to prosecute his business and pay his debts, he should at once subject his property to such a disposition as the bankrupt law has provided for. The property then becomes a sacred trust for the benefit of his creditors, who have a right to insist that it shall be administered, not according to the wish or preference of the insolvent, or in accordance with the insolvent law of the state, but according to the provisions of the national bankrupt law." This, in my judgment, is the. sounder construction of the bankrupt law, as to the point in question. and by reference to the Case of Randall & Sunderland [Case No. 11,551]. it will be seen that Judge Deady, of the district of Oregon, entertains a similar view, and in its support has given to the profession an argument which few of his brethren of the North, the South, or the East will attempt to refute, to strengthen, or amend. In .re Goldschmidt [Id. 5,520]. The view is adopted by Judge Blatchford, of Southern district of New York.

But secondly, say. the respondents, supposing the assignment to be an act of bankruptcy, these petitioners are estopped by certain acts of omission or commission from complaining thereof in this court by petition. They have, say the respondents, delayed filing their petition for sixteen days from the date of the assignment; have within that period often conferred with the respondents and their assignee, concerning the condition of the estate, and have sought to sell their claim against the respondents to the assignee for about half its amount; and last, but not least, have offered to assent to the assignment, and refrain from proceedings under the bankrupt law, if the respondents and the assignee would surrender the property assigned, and. commit its disposal and management to some person more satisfactory to the petitioners and other creditors than was the assignee named, who, it was conceded, was personally unacquainted with the business of the assignors, and who insisted on employing, as his agents, for the purposes of the trust, the assignors themselves. As to this ground of defense, it seems needful merely to say, that the facts in proof are, in my view, insufficient for the exigency. That a creditor may be estopped by his acts or declarations, from proceeding in bank-

ruptcy against a debtor, no matter how culpable the debtor may be, is readily conceded; and that a court should always aim, by recognizing the doctrine of estoppel, to subserve the interests of good morals and fair dealing, is also conceded. Still, in my view, before it can adjudge a creditor estopped from invoking against a debtor the powers of a court of bankruptcy, he should be held to prove other facts, and more pertinent and significant than those proven in this case— and this, though it were not shown by the creditor, as it is shown in this case, that proceedings in bankruptcy were resolved on by the petitioners as soon as it was ascertained that the debtors would not assent to a substitution of any assignee in the place of one chosen by them, and that within seventeen days next succeeding the date of the act of bankruptcy their petition against their guilty debtors was filed.

It is gratifying to the court to be warranted in adding, that no corrupt intent to defraud a creditor, or to contravene any statute of the state, is imputed to the respondents or their learned counsel by the petitioners, or is imputable to them upon the evidence. But on the other hand, it is anything but gratifying to learn, what is shown by the testimony in this cause, that there is much reason to doubt whether, even at this late day, the community at large fully realize as a veritable fixed fact, that under this bankrupt law, so far as concerns the relations of debtor and creditor, the mode of conducting business, and the possession and disposal of property by parties of blighted credit or in embarrassed or straightened circumstances, "old things have passed away, and all things have become new." For many years past, it has been known everywhere, in Gath and Askalon, as well as in Providence and Newport. that in Rhode Island, assignments were upheld by our courts in conformity with state laws, which in any other state in the Union would at sight have been set aside as fraudulent, by any judge or chancellor. The bankrupt law, it should now be remembered, practically nullifies these state laws, and stigmatizes as fraudulent, in fact or in law, many a practice which the business men and legislators of Rhode Island have been wont to uphold and commend, as pre-eminently conducive to the prosperity of all of the state's multiform industrial pursuits and enterprises.

In the controversies, wherever raging, in relation to the expediency of the enacting of the bankrupt law, or the expediency or inexpediency of its repeal, the bench cannot, without impropriety, participate. Its duty is done, when, as cases arise, it expounds, applies, and administers the law, and as the law's organ, makes known to the community those rules of conduct to which the citizen will be required to prove conformity on his part when it shall have chanced that, for or against him, the searching, potent, and. ine-

vasible processes of the bankrupt law shall have been invoked.

The respondents are adjudged bankrupts.

Decree entered, declaring the firm of Ward & Trow bankrupts.